UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNN MARIE CONNOLLY,

    Plaintiff,

vs.                                                                                                                                                Case No. 12-12517

DEUTSCHE BANK NATIONAL TRUST                    HON. AVERN COHN
COMPANY AS TRUSTEE FOR CERTIFICATE
HOLDERS FOR QUEST TRUST 2006-X2,
ASSET BACKED SECURITIES, SERIES-X-2,

    Defendant.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 20)
## AND
## DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 22)[1]

### I. Introduction

This is another one of many cases pending in this district involving a default on a mortgage and subsequent foreclosure proceedings. Plaintiff Lynn Marie Connolly has filed a complaint naming Deutsche Bank National Trust Company (Bank) as Trustee for Certificate Holders for Quest Trust 2006-X2, Asset Backed Securities, Series-X2 as defendant. The complaint asserts the following claims:

    Count II[2]      Declaratory Judgment/wrongful Foreclosure

    Count III      Quiet Title

    Count IV      Slander of Title

    Count V       Slander by False Publications

---

    [1]Although originally scheduled for hearing, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

    [2]Count I contains only jurisdictional allegations.

  Count VI  Violation of M.C.L. § 600.3205(a)

  Count VII  Violation of M.C.L. § 444.9109(1)(c)

Before the Court is defendant's motion to dismiss or for summary judgment[3] and plaintiff's motion for partial summary judgment. For the reasons that follow, defendant's motion will be granted and plaintiff's motion will be denied.

## II. Background

### A.

This case concerns real property located at 6500 Bentley Lake Road, Whitmore Lake, Michigan. On October 24, 2002, plaintiff received a $333,000.00 loan from Ameriquest Mortgage Company (Ameriquest) to finance the purchase of the property. Plaintiff signed a note evidencing the loan. Plaintiff also granted Ameriquest a mortgage on the property. On January 15, 2009, CitiResidential Lending, acting on behalf of Ameriquest, assigned its interest in the mortgage to the Bank. On May 9, 2009, a second assignment was made from the Bank to the Bank as Trustee. All of these documents were recorded.

At some point in 2009, plaintiff filed for bankruptcy.

Plaintiff defaulted on the loan by not making payments. The Bank as Trustee, who obtained relief from the stay in bankruptcy court, initiated foreclosure proceedings. On May 12, 2010 the Bank as Trustee purchased the property at a Sheriff's sale for $108.750.00.

---

[3]The motion is titled a motion for summary judgment. However, defendant cites to and argues that the complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.

On December 1, 2010, an Affidavit Expunging the May 12, 2010 Sheriff's Deed on Mortgage Sale was executed and later recorded on December 8, 2010. The affidavit states that the sheriff's deed must be expunged because the sheriff's sale was "inadvertently held."

On December 9, 2010, a third assignment of the mortgage was recorded from the Bank as Trustee to the Bank as Trustee for different asset backed securities, the named defendant in this case (hereafter "defendant"). The third assignment was recorded.

Plaintiff continued to default on her loan obligations. Defendant, after obtaining relief from the automatic stay, again initiated foreclosure proceedings. On May 18, 2011, nearly a year after the first sale, a second sheriff's sale was held. Defendant purchased the property at the sale for $172,000.

**B.**

On April 24, 2012, prior to the expiration of the redemption period, plaintiff filed a complaint in state court.

On May 18, 2012, plaintiff's right to redeem the property expired. Plaintiff failed to redeem.

On June 11, 2012, defendant removed the case to federal court.

On July 17, 2012, the Court held a status conference with the parties at which plaintiff's counsel stated a desire to file an amended complaint. The Court then issued a order setting deadlines for the filing of a motion to amend (Doc. 6).

Thereafter, plaintiff filed a motion to amend the complaint seeking to add the following three claims:

3

    Count VII       "Manipulation of Libor Rate"

    Count VIII     Tortious Interference with Redemption Rights

    Count IX       Abuse of Process and Fraud by Concealment

Defendant opposed the motion on the grounds amendment would be futile because the new claims asserted in the proposed amended complaint cannot withstand a motion to dismiss. The Court agreed and denied the motion. (Doc. 15).

The parties then filed the instant dispositive motions.

### III. Legal Standards

#### A. Dismissal

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Aschcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). See also Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999).

Specifically in contract cases such as this, "if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. QQC, Inc. v. Hewlett-Packard Co., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997)). A court is also entitled to consider matters of public record without converting the motion to one for summary judgment. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007).

### B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325

(1986).

Revised Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).[4]

The revised Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or

(4) issue any other appropriate order.

---

[4] Plaintiff argues that documents attached to defendant's motion cannot be considered because they are not properly authenticated and or are otherwise inadmissible. Plaintiff is mistaken. The documents attached as exhibits consist of (1) documents attached as exhibits to plaintiff's complaint, (2) documents recorded with the Livingston County Register of Deeds, (3) copies of documents filed in plaintiff's Bankruptcy proceeding, and (4) a copy a transcript from plaintiff's deposition. All of these documents are properly considered on a motion for summary judgment; indeed, some may be considered on a motion to dismiss.

6

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party, Hager v. Pike Cnty. Bd. of Ed., 286 F.3d 366, 370 (6th Cir. 2002).

## IV.  Analysis[5]

### A.  Expiration of the Redemption Period

Before addressing plaintiff's claims, it is undisputed that plaintiff failed to exercise her statutory right to redeem the foreclosed before the six-month statutory redemption period expired. As the Court of Appeals for the Sixth Circuit and Michigan Supreme Court have observed, this fact has significant consequences.

"[U]nder Michigan's foreclosure statute, 'all the right, title and interest which the mortgagor had at the time of the execution of the mortgage' vests in the entity that purchased the foreclosed property in the sheriff's sale after the expiration of the redemption period." El-Seblani v. IndyMac Mortg. Servs., No. 12-1046, 2013 WL 69226, *3 (6th Cir. Jan. 7, 2013) (quoting Mich. Comp. Laws § 600.3236 and citing Piotrowski v. State Land Office Bd., 4 N.W.2d 514, 517 (Mich. 1942), as support). "A

---

[5]The arguments presented by the parties in their respective dispositive motions will be addressed in this analysis.

strict reading of the statute suggests that once the redemption period expires, the homeowner has no legal interest in the property that litigation might vindicate." Id.

Michigan courts do, however, "allow 'an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice' in order to keep a plaintiff's suit viable, provided he makes 'a clear showing of fraud, or irregularity' by the defendant." Id. (quoting Schulthies v. Barron, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)).  "The misconduct must relate to the foreclosure procedure itself." Id.  "Moreover, because the foreclosure statutes are intended to create finality and certainty in property rights, an action challenging foreclosure must be brought 'promptly and without delay.'" Id. (quoting Richard v. Schneiderman & Sherman, PC, 818 N.W.2d 334, 337 (Mich. Ct. App. 2011), rev'd on other grounds, 807 N.W.2d 325 (Mich. 2012)).  Thus, plaintiff can bring an action to challenge the foreclosure proceedings after the expiration of the redemption period.  The scope of relief, however, is circumscribed, as explained below.

### B.  Setting Aside the Foreclosure

To the extent plaintiff says that the foreclosure sale of the property should be declared void ab initio, the argument is not well-taken.  In Kim, the Michigan Supreme Court held that under Michigan law a failure to comply with the requirements of Michigan's foreclosure by advertisement statute renders the foreclosure voidable, not void ab initio.  See Kim v. JPMorgan Chase Bank, N.A., 493 Mich. 98, 115–16 (2012) (reviewing Davenport v. HSBC Bank USA, 739 N.W.2d 383, 384 (Mich. Ct. App. 2007), the decision the Sixth Circuit relied upon for its contrary holding in Mitan v. Fed. Home Loan Mortg. Corp., ___ F.3d ___, 2012 WL 6200257 (6th Cir. Dec. 12, 2012), and

8

holding that "Davenport's holding was contrary to the established precedent of [the Michigan Supreme] Court."). Thus, under controlling Michigan law, the foreclosure sale cannot be declared void ab initio. See Savedoff v. Access Group, Inc., 524 F.3d 754, 762 (6th Cir. 2008) (observing that federal courts must follow the decisions of the state's highest court when applying state law). So, the issue this Court must now address is whether, under Michigan law, the foreclosure sale on the property is voidable, or could be set aside, on the facts alleged.

The Michigan Supreme Court's decision in Kim instructs on this issue as well. "[T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [Michigan's foreclosure by advertisement statute]." Id. "To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." Id. The concurring opinion by Justice Markman provides further guidance "concerning the nature of the 'prejudice' that plaintiffs must demonstrate in order to set aside the foreclosure;" and, in that regard, provides a nonexhaustive list of factors to be considered. Id. at 120–21. These include: (1) "whether plaintiffs were misled into believing that no sale had been had;" (2) "whether plaintiffs act[ed] promptly after [becoming] aware of the facts on which they based their complaint;" (3) "whether plaintiffs made an effort to redeem the property during the redemption period;" (4) "whether plaintiffs were represented by counsel throughout the foreclosure process;" and (5) "whether defendant relied on the apparent validity of the sale by taking steps to protect its interest in the subject property." Id. (Markman, J. concurring) (internal quotation marks and citations omitted). The Sixth Circuit recently and similarly found

that a borrower may not challenge a foreclosure sale after the expiration of the redemption period absent showing a "high standard" of fraud. See Conlin v. Mortgage Electronic Registrations Sys., Inc., 714 F.3d 355 (6th Cir. 2013).

Applying Kim, plaintiff cannot establish the prejudice required to set aside the foreclosure sale of the property. This is so because none of plaintiff's claims relating to the mortgage and the foreclosure proceedings are viable, as explained below.

### C. Plaintiff's Claims

### A. Count II - Declaratory Judgment/ Wrongful foreclosure

In Count II, plaintiff says that the foreclosure process was defective. Her primary argument in this regard is that the foreclosure was defective due to the filing of the Affidavit of Expungement. Plaintiff's contention lacks merit.

Defendant filed the Affidavit of Expungement under M.C.L. 565.451a, which specifically allows the filing of affidavits affecting real property, including affidavits discussing "the happening of any event which may terminate an estate or interest in real property." M.C.L. 565.451a(b). Similarly, M.C.L. 565.453 provides that affidavits affecting real property "may be received in evidence in any civil cause . . . in any suit or proceeding affecting the real estate and shall be prima facie evidence of the facts and circumstances therein contained." Indeed, multiple foreclosures by advertisement were set aside by affidavits filed under M.C.L. 565.451a following the Court of Appeals' decision in Saurman, which was later revered by the Michigan Supreme Court.

The Michigan Court of Appeals recently decided a similar case. In Cordes v. Great Lakes Excavating & Equipment Rental, Inc., No. 304003, 2012 WL 2052789

(Mich. App., June 7, 2012), the court of appeals analyzed competing interests in real property, where one party recorded an affidavit stating that the plaintiff's mortgage should not have been discharged "and that the mortgage remained in effect."'" Relying on M.C.L. 565.451a and M.C.L. 565.453, the court of appeals held that the affidavit was effective, on its own, to affect the parties' interest in the property. Id. at *2.

The court of appeals rejected defendant's argument that the affidavit could not resurrect a mortgage that had been discharged:

> [The defendant] next argues that under M.C.L. 565.453, the [] affidavit is merely prima facie evidence that the [] discharge was erroneous and that the affidavit could not effectively resurrect the recorded mortgage after the discharge was recorded. Again, we disagree. The recording statutes establish a system that enables persons to search and rely upon the public record to verify property interests . . . In this case, the recorded documents (and in particular the affidavit) were sufficient to put interested persons on notice that the parcel was encumbered by a mortgage and that [the] discharge of the mortgage was erroneous.

Id. at *3.

Here, although the mortgage had been foreclosed, the affidavit expunged the 2010 sheriff's deed and provided notice that the property still was encumbered by the mortgage. See also Freund v. Trott & Trott, P.C., No. 299011, 2011 WL 5064248 (Mich. App. Oct. 25, 2011) (unpublished) (acknowledging that an Affidavit Expunging Sheriff's Deed, filed under M.C.L. 565.451a to rescind a MERS foreclosure, returned the foreclosed mortgage to "full force [and] effect as reflected by the Register of Deeds").

Thus, the Affidavit of Expungement was sufficient to expunge the 2010 sheriff's deed and return the mortgage "to full force and effect." To the extent Count I is based on challenges to the Affidavit of Expungement, plaintiff is not entitled to relief.

Plaintiff also challenges the validity of the note. Putting aside that defendant is not seeking to enforce the note, as defendant is the owner of the property and the right it seeks to enforce is an eviction action against plaintiff in state court, plaintiff's arguments do not carry the day.

Plaintiff says that defendant is prohibited from foreclosing on the property because the Uniform Commercial Code bars defendant from enforcing the note and the securitization of the loan renders the note void. Plaintiff's argument regarding securitization and "split" of the note and the mortgage have been expressly rejected by the Michigan Supreme Court. In Residential Funding Co, LLC v. Saurman, 490 Mich. 909, 910 (2011), the Michigan Supreme Court held that a mortgage and a note could be held by different parties – and that any such allocation of a note and mortgage does not have any impact on the enforceability of the Mortgage. Id. at 909 ("[i]t has never been necessary that the mortgage should be given directly to the beneficiaries."). See also Carmack v. Bank of New York Mellon, No 12–cv–11669, 2012 WL 2389863, at * 4 (E.D. Mich. June 25, 2012) (relying on Saurman and noting that arguments concerning the splitting of the note and mortgage are "without merit."); Leone v. Citigroup, Inc., No. 12-10597, 2012 WL 1564698)at *3-4 (rejecting the argument that securitization of the underlying indebtedness somehow invalidates the Loan, finding that securitization of a loan "has no impact on the validity of the mortgage, or on the power of the mortgagee to foreclose.").

Plaintiff also challenges the foreclosure by attacking the validity of the assignments. This argument fails. "A non-party cannot challenge a mortgage assignment." Carmack, supra at *6-7 (citing Livonia Properties Holdings, L.L.C. v.

12

12840-12976 Farmington Rd. Holdings, L.L.C., 399 F. App'x 97, 102 (6th Cir. 2010, cert. denied, 131. S. Ct. 1696 (2011)). See also Yuille v. American Home Mortgage Serv's. Inc., 483 Fed. Appx. 132 (6th Cir. May 29, 2012) (stating that "any defect in the written assignment of the mortgage would make no difference where both parties to the assignment ratified the assignment by their subsequent conduct in honoring the terms and that [mortgagor], as a stranger to the assignment, lacked standing to challenge its validity." Here, plaintiff was not a party to any assignments in the chain of title. Therefore, she cannot challenge the assignments.

The court in Livonia Properties noted an exception to the general rule that a non-party lacks standing to challenge an assignment when an obligor is attacking as assignee's lack of title to foreclose. See Livonia Properties, 399 Fed. App'x. at 102; Martin v. Gateway Funding Diversified Mortg. Servs., L.P., 12-11764, 2012 U.S. Dist. LEXIS 151207, *15 (E.D. Mich. Oct. 22, 2012). This exception exists only when there is a risk that the obligor may be forced to pay the same debt twice. See Martin, 2012 U.S. Dist. LEXIS 151207 at 15 ("Plaintiff does not allege that he needs protection from having to pay the same debt twice. Moreover, it appears from the pleadings that such risk most likely does not exist because BNYM as Trustee of the Trust also holds the interest in the note."); Carmack, supra at *6-7 (same); Thomas, 2012 U.S. Dist. LEXIS 33649 at *14 (same). Plaintiff has not alleged any risk of double liability.

Moreover, defendant had standing to foreclose on the property. Under M.C.L. § 600.3204(d), a "party may foreclose a mortgage by advertisement if … [t]he party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." The

13

third recorded assignment and sheriff's deed demonstrate that defendant is the mortgagee of record. Thus, defendant, as mortgagee of record, had standing to foreclose on the property by advertisement under M.C.L. § 600.2304(1)(d). See Saurman, 490 Mich. 909 (2011) (concluding that "the Legislature's use of the phrase 'interest in the indebtedness' to denote a category of parties entitled to foreclosure by advertisement indicates the intent to include mortgagees of record among the parties entitled to foreclosure by advertisement," citing M.C.L. § 600.3204(1)(d)).

In sum, the record does not contain any evidence supporting plaintiff's challenges to the foreclosure. Indeed, the law in this area demonstrates that plaintiff's arguments lack merit.

### B. Count III - Quiet Title

In Count III, plaintiff seeks to quiet title. In order to properly allege a quiet title claim, plaintiff must meet the requirements set forth in M.C.R. § 3.411, or, for a federal cause of action, 28 U.S.C. § 2409a(d). These rules require that plaintiff properly allege her ownership interest in the property. M.C.R. § 3.411(B) states, "(2) The complaint must allege, (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." 28 U.S.C. § 2409a(d) states,"[t]he complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." Moreover, plaintiff must show that he has title to the property superior to claims by others with an interest in the property. Beaulah Hoagland Appelton Qualified Pers. Residence Trust v. Emmet County Road Comm'n, 236 Mich.

App. 546, 550 (1999) ("In an action to quiet title, the plaintiff have the burden of proof and must make out a prima facie case of title")

Here, as explained above, plaintiff has not made a showing of fraud or irregularity sufficient to unwind the foreclosure sale. Indeed, there "must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by a defendant." Houston, 2012 WL 5869918, at *5. As such, plaintiff has not made out a viable claim for title over defendant.

Moreover, plaintiff admits to failing to make timely payments under the note and mortgage. Although she disputes that she is in "default," the fact she failed to make payments militates against quieting title to her. See Yuille, supra at *2 (finding that a borrowers failure to make timely payments precluded a quiet title claim).

Plaintiff's quiet title also fails because the Sixth Circuit has recently held that a quiet title claim is a remedy, and not a separate cause of action. Goryoka v. Quicken Loan, Inc., 2013 WL 1104991, at *3 (6th Cir. March 18, 2013).

Overall, plaintiff is not entitled to any relief under Count III.

### C. Count IV - Slander of Title

In Count IV, plaintiff alleges slander of title. A slander of title action generally deals with a tort claim2, where a plaintiff must plead that "the defendant maliciously published false statements that disparaged a plaintiff¡|s right in property, causing special damages." B & B Inv. Group v. Gitler, 229 Mich. App 1, 8; 581 N.W.2d 17 (1998). To show malice in a slander of title action, "the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." Stanton v Dachille, 186 Mich. App 247, 262; 463 N.W.2d 479 (1990). To demonstrate slander of

15

title, plaintiff must show (1) falsity of the statement made, and (2) malice. Bonner v. Chicago Title Ins Co., 194 Mich. App. 462, 469; 487 NW2d 807 (1992): (citations omitted). The statute of limitations for slander of title is one year: "the one-year period of limitation for an action charging libel or slander applies to an action for slander of title." Id. at 471.

Here, this claim is duplicative of her allegations in Count II challenging the sheriff's sale, which fail for the reasons stated above.

Second, plaintiff has not presented any facts showing that any acts by defendant were taken with the requisite malice. When asked about malice at her deposition, plaintiff could not identify any malicious behavior conducted by defendant, except to say that her time to redeem the property was shortened.

Moreover, plaintiff has not alleged that her title interest was impaired in any manner; instead, she no longer possesses any title interest to the property. Thus, her title could not have been disparaged. See Olesuk v. Federal National Mortgage Association, No. 12-11001, (E.D. Mich., June 27, 2013 ) at p. 9, (dismissing a slander of title claim brought by Defendants' counsel because the assignments at issue, even if they were fraudulent, did not disparage his clients¡| title).

Additionally, the complaint was not filed until April 24, 2012; therefore, any allegation that any document recorded against the property prior to April 24, 2011 would be time-barred. The only document recorded against the property after April 24, 2011 is the May 26, 2011 sheriff's deed, which plaintiff admitted contains no false statements.

Moreover, the slander of title claim is a fraud claim precluded by the rule that prevents pursuing a tort remedy when the parties' relationship is governed by a

16

contract. See, e.g., Sherman v. Sea Ray Boats, Inc., 251 Mich. App. 41, 50 (2002) ("Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established.") There is nothing in the record to show that defendant owed a separate duty to plaintiff.

Overall, plaintiff is not entitled to relief under Count IV.

### D. Count V - Slander by False Publication

In Count V, plaintiff alleges that false statements were published, causing her damages. This claim is construed as a defamation claim. A statement is considered ¡§defamatory¡¨ if it damages the reputation of an individual in the community, or if it deters others from associating with the individual. Oak Grove Cremation Center, Inc. v Peterson, No. 273391, 2007 WL 1452235 at *1 (unpublished, Mich. App. May 17, 2007). Moreover, the alleged defamatory statements must be "provable as false." Ireland v Edwards, 230 Mich. App. 607, 617 (1998).

Here, the only alleged defamatory statements concerning plaintiff were that she was in default of the mortgage and note. This is not defamatory as plaintiff admits that she ceased making payments in December, 2008. Because there is no false statement, there can be no defamation. Truth is an absolute defense to a defamation claim. Porter v. Royal Oak, 214 Mich. App. 478, 486; 542 N.W.2d 905 (1995). When asked at deposition what was slanderous about the allegedly false documents that were published, plaintiff was unable to identify any false statements made about her personally in any of the documents recorded against the property. Plaintiff is not entitled to relief on Count V.

### E. Count VI - Violation of M.C.L. § 600-3205(a)

In Count VI, plaintiff claims a violation of M.C.L. § 600-3205(a). This claim fails. This statute provides that before a bank can foreclosure on a home, the lender must provide the homeowner with notice designating a point of contact for a loan modification. M.C.L. § 600.3205a(1). As of December 2011, a borrower may contact the lender directly. Id. § 600.3205b. The lender then must meet with the homeowner to attempt to work out a modification. If negotiations fails, the lender must still calculate whether the homeowner qualifies for a modification and provide them with a copy of the calculations. Id. § 600.3205c(5).

Even if defendant somehow failed to comply with the statute, plaintiff cannot receive the remedy she seeks - legal title. Rather, the statute provides a borrower with an opportunity to enjoin the sale and force the foreclosure to be conducted under the judicial foreclosure process if the foreclosure is conducted in violation of the statute. See M.C.L. § 600.3205c(8). Unless the borrower timely files a complaint seeking such relief, nothing prevents the lender from foreclosing by advertisement. Id. The statute does not provide a plaintiff with a cause of action to seek the reversal of a sheriff's sale that has already occurred.

Other courts in this district have examined this issue on multiple occasions, and concluded that a borrower's sole relief for an alleged violation of the loan modification statutes is to seek the conversion of the foreclosure sale to a judicial foreclosure, prior to the sale. See Stein v. U.S. Bancorp, 2011 WL 740537, at *10 (E.D. Mich. Feb. 24, 2011) ("The provision allows certain borrowers to determine the type of foreclosure proceeding, not to avoid foreclosure altogether or set aside an already-completed

foreclosure." (emphasis in original)); Adams v. Wells Fargo Bank, N.A., 2011 WL 3500990, at *4 (E.D. Mich. Aug. 10, 2011) ("Even if Plaintiff is correct about Defendant's failure to agree to a modification, he failed to show that he is entitled to the requested relief. The plain language of § 600.3205c(8) limits his relief. It does not authorize the Court to set aside the foreclosure."). The Sixth Circuit recently held the same. See Block v. BAC Home Loans Servicing, L.P., 2013 WL 1223892, *2 (Mar. 26, 2013). Thus, even if plaintiff could show a violation of the loan modification statute, she cannot obtain the relief she seeks in the form of setting aside the foreclosure sale. Accordingly, defendant is entitled to judgment on Count VI.

### F. Count VII - Violation of M.C.L. § 440.9109(1)(c)

In Count VII, plaintiff claims a violation of M.C.L. § 440.9109(1)(c). This section provides:

> (1) Except as otherwise provided in subsections (3) and (4), this article applies to all of the following:
>
> (c) A sale of accounts, chattel paper, payment intangibles, or promissory notes.

This is the general section for Article 9 of the Uniform Commercial Code, as adopted in Michigan. It does not provide an independent basis for a cause of action. Moreover, the allegations supporting this claim appear to relate to a failure of defendant to produce the note. Such a claim fails. See Saurman, supra, at 909 (stating that "[it] has never been necessary that the mortgage should be given directly to beneficiaries."). Plaintiff is not entitled to relief based on this claim.

### VI. Conclusion

For the reasons stated above, plaintiff has not established that the foreclosure

19

should be set aside. The record shows that plaintiff knew she was in default on her mortgage, that she was aware of both foreclosures and the subsequent sales, and did not attempt to redeem the property. While she says her redemption rights were cut off, more than one year elapsed between the first and second foreclosures. She was also represented by counsel during the process. Moreover, plaintiff's challenges to defendant's role in the process and the chain of title are not sustainable.

Accordingly, defendant's motion is GRANTED. Plaintiff's motion is DENIED. This case is DISMISSED.

SO ORDERED.


   S/Avern Cohn                  
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 13, 2013, by electronic and/or ordinary mail.

   S/Sakne Chami            
Case Manager, (313) 234-5160